*1191 OPINION.
MoRRis:
The petitioner alleges and contends, and requests the Board to determine, that abnormalities, respecting both income and capital, exist within the meaning of subdivision (d) of section 327 of the Revenue Act of 1918, and that it is entitled to compute its profits tax under the provisions of section 328 of said act. That portion of section 327 urged for consideration reads:
Sec. 327. That in the following eases the tax shall be determined as provided in section 328:
* * * * * * *
(d) Where upon application by the corporation the Commissioner finds and sq declares of record that the tax if determined without benefit of this section *1192 would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. * * *
In support of its allegation that abnormal conditions are present m its capital and income the petitioner complains of the respondent’s action in holding that it and the said Simmons Co. were not affiliated, for tax purposes, during the period January 1 to May 31, 1919, resulting in the exclusion of its taxable income from a consolidated return filed for said period, notwithstanding during such period it had the use and benefit of the large sales organization of the said Simmons Co. It is further contended by the petitioner that it had the use of its, manufacturing building, which belonged to its principal stockholders, at a rate considerably below a fair and reasonable rental, and finally that during the period under consideration it had the use of its officers’ services for less compensation than they were normally worth and entitled to.
The petitioner’s business was organized in the year 1900 and it engaged successfully in the manufacture of mattresses, beds, cots, and pillows until it was acquired in 1919 by the Simmons Co., a manufacturer of mattresses. All of its capital stock was owned by its founders, Hirsch and Spitz, and certain of its principal employees, who because of their loyal services and in accordance with a promise that they would at some time be compensated for having served the company at low salaries during the earlier years of its existence, had been allotted a small number of shares by the founders of the business.
The Simmons Co., anxious to acquire the business of the petitioner, especially the services of its founders, began negotiations in the fall of 1918 which culminated in a written agreement being entered into in May, 1919, whereby the business of the petitioner was acquired by that company through the surrender of its capital stock for $1,400 a share, the purchase, according to said agreement, to take effect as of January 1, 1919, it being understood and agreed that the Simmons Co. should take over the business in its entirety, except certain Government bonds, including the profits for the first five months of 1919 upon which it should pay the taxes.
The Simmons Co., a nationally known enterprise, employed from 130 to 140 salesmen, dispersed throughout the United States, during the period January 1 to May 31, 1919, all of whom sold the petitioner’s merchandise in addition tó the merchandise sold by their own company. None of the sales expenses, however, incurred by the Simmons Co. in the sale of the petitioner’s merchandise were allocated or charged to the petitioner, The petitioner’s earnings for the *1193 entire year 1918 were $60,585.45, whereas for the first five months of 1919 they were $90,222.74, and its expenses for the entire year 1918 were $82,413.04, whereas for the first five months of 1919 they were $24,772.41. This marked disparity in the ratio of expenses to earnings during the five months in 1919 as compared with the preceding- year or years, as we have already said in our findings of fact, “is accounted for by the fact that the petitioner enjoyed the use of the Simmons Co. organization, particularly its 130 to 140 traveling salesmen, without any additional cost to it, as hereinbefore stated.”
It has been shown that the petitioner enjoyed the use of its manufacturing building, individually owned by Hirsch and Spitz, at a rent charge which was computed upon the basis of what they, as owners, should be entitled to as interest upon their investment, which, as a proven fact, was somewhat less than a fair and reasonable rental.
Hirsch and Spitz were men of proven and outstanding abilities in the business in which they were engaged, and particularly were they highly regarded by the Simmons Co. That company, as we have found, had endeavored to interest both of these men in positions in 1918, Spitz to receive a salary of $50,000 a year as general sales manager in Hew York. During the period here involved the salaries or drawings of Hirsch and Spitz were at the rate of $6,300 and $8,400 per annum, respectively. Upon the acquisition of the petitioner’s business by the Simmons Co. they continued as employees and received salaries in the beginning of $10,000 and bonuses of $5,000 each, later increased to $15,000 and $5,000 each, respectively.
Therefore, the fact that there was a very close relationship between the petitioner and the Simmons Co. during the five-month period under consideration, its business having, as a matter of fact, been taken over as of January 1, 1919, enabling it to enjoy the full use and benefit of that company’s organization and its large sales force, without any cost to it whatsoever, resulting in the disparity in income of which we have spoken hereinbefore; that the petitioner enjoyed the use and benefits of its manufacturing building at a considerably reduced rental; and the further fact that its officers and employees, who were responsible for its success, served the petitioner for salaries far below what they were normally entitled to and could have claimed, we believe, entitle it to the relief which it seeks and we hold, therefore, that its profits tax should be computed under the provisions of section 328 of the Eevenue Act of 1918 for the period in question.
The issue numbered two herein is with respect to the failure of the respondent to allow a deduction of commissions earned by its salesmen in excess of their regular drawing accounts. The record *1194 shows that the petitioner was obligated to pay its salesmen a commission of 5 per cent of its gross sales in excess of certain specified drawings, and that they earned in addition to said drawings $5,866.26 for the period in question. Its accounting practice was to credit the amounts of drawings upon its books monthly and the commissions were credited or paid annually upon December 31. Since the petitioner was legally obligated to pay these commissions and since it appears that they were in fact earned, although paid by the Simmons Co., which assumed the petitioner’s liabilities, and not by the petitioner, we are of the opinion that the respondent erred in disallowing the deduction. Nekonegan Paper Co., 16 B. T. A. 1000.
Reviewed by the Board.

Further proceedings will be had wader Rule 6%{e).

Sternhagen, Smith, and Muedock dissent on the second point.